Mr. Arneson, we note that you have been appointed under the Criminal Justice Act, and the court appreciates your accepting that appointment on behalf of Mr. Bigbee. Well, thank you, Your Honor. Good morning, Your Honors. My name is Wyatt Arneson, and I represent Andrew Bigbee in this appeal. Now, we are appealing on two grounds that essentially merge into one. The first is the fourth motion to suppress that I did file as his trial attorney regarding to a cell phone search. And then the second motion would be on the sufficiency of the evidence. Now, as a way of background, I was Mr. Bigbee's trial attorney. I came on to his case approximately a month before he was scheduled to go to trial. He had had a prior attorney for approximately four years on the case who did file three motions to suppress. However, that attorney was conflicted out before trial. I took over approximately six months after I took over, this case went to trial. Now, the motion I filed, that fourth motion to suppress from Mr. Bigbee's cell phone that was found at the third time a search was conducted regarding Mr. Bigbee, the judge did deny as untimely and then found the good faith exception. Now, it is true the government is correct. I did not brief that untimely motion, and that is my fault, and I do apologize for that. However, I would note that as I stated in my motion, I wasn't able to see that evidence until September 6, 2023, the same day that I filed the motion challenging it. Now, the judge did rule that that was untimely. However, in way of background, your honors, this case did have quite a bit of evidence that started September of 2019. There was a search at Mr. Bigbee's house where methamphetamine was found. There was another search regarding Mr. Bigbee on October 16th of 2020 when he was in an RV and some methamphetamine was found. And then the third search which resulted with the cell phone at issue in this case was on May 6th of 2021. Now, the government searched the residence where Mr. Bigbee and another lady were staying. They found the cell phone that day. However, they did not search the contents of that cell phone for approximately 22 months. Now, the government would argue that Mr. Bigbee's prior attorney, he did challenge, he filed a motion to suppress evidence related to that May 6, 2020, 2021 search in his third motion to suppress evidence. But at that point, the cell phone had not been searched. So, what is your main argument about the cell phone? That cell phone is really the focus of this motion to suppress, correct? Correct. Almost a motion in limine, but I think it was crafted as a motion to suppress. What is, what's your key argument? What went wrong such that the evidence seized from that cell phone should have been suppressed? I think it's the timeliness of the government waiting the 22 months to search it. Now, I understand that there is case law, the Lace case lays it out. It is an 11th Circuit Court case talking about the significant interference with the person's possessory interest. However, the U.S. Supreme Court in U.S. v. Jacobson did say that an owner's possessory interest must be weighed against this. I think that the times have changed quite a bit, where cell phones are no longer what just a typical phone was. A person's possessory interest in their cell phone, even while they're incarcerated, is still great. How is that when you're in, just as a practical matter, I don't understand the general concept, but as a practical matter, does it play into the fact that he was in custody and I don't think you can have cell phones in jails and prisons right now? Correct, Your Honor. He cannot have a cell phone while in jail. But I practice mostly at the district court level, and I have multiple clients who are in jail with law enforcement holding their phones. That phone is not just a way for that person to communicate. That phone is a way for them, their contacts, information beneficial to them related to their case medical records, bank records. There are multiple clients that wish to have that phone released to a loved one, at least to be able to access that, because in this day and age, just about all of our lives are on our cell phones. We don't remember phone numbers for clients or defendants to remember who to contact to say, yes, I know so and so, they could help out in my case, but I don't have their contact information. It's in my phone. I don't remember their... Counsel, is there anything in the record to indicate that happened here? That there was information that would have been helpful to the defense on the cell phone that he did not have access to? No, Your Honor. In all candor, there is not any information on the record that that is... Is there any indication that there was something on the phone that was lost or tampered with or anything to indicate there was a spoliation of... Something to show that there was prejudice to the defendant? No, Your Honor. Not in this case. In this case, like I said, law enforcement did hold onto that phone for quite some time before searching it. They started to search it approximately when I came onto the case. I went back and started back in 2019 to review the evidence just to make sense of it myself and was getting caught up as we went to trial. Does it matter then that they got a second warrant? What is that playing? They got the second warrant. I don't know what your position is about the first warrant, if it was still valid. What's your view on what that second warrant does here? Good, bad, neutral? Well, as a defense attorney, I always appreciate that they do get a warrant. I want a magistrate to oversee to make sure that they can do it. I understand the boots and suspenders approach that they took. It's just difficult for Mr. Bigby in a case such as this to even challenge that they had his cell phone when he was switching attorneys and clients, and this was all happening during COVID. I don't know how much contact his prior attorney was able to have with him at the jail to go over this evidence. I understand that they did get that second search warrant, kind of a belt and suspenders approach. I guess my main concern is that 22-month delay in even obtaining that second search warrant while they held onto his phone the entire time. How do we judge that? How do we determine what is too long? What factors? There's not a lot out there on the federal rule on this. How do we know when it's no longer a reasonable amount of time to hold onto something before executing the warrant? Thank you, Your Honor. I would agree. I don't know if there can necessarily be a bright line rule, but I would argue just with the Speedy Trial Act, had Mr. Bigby demanded speedy trial, unfortunately, as I said, this was all during COVID when the court sua sponte was delaying things and things were chaos. However, regardless, there's no reason that a year after something hasn't been seized that it's not searched. The government doesn't need the physical cell phone. There's nothing about the phone they were looking for. It wasn't they were not gaining DNA or fingerprints off the cell phone. It was simply the data onto a vessel that could be of use of someone else, other than it's a hardship for that person when they hold onto the phone. Are you arguing that there was anything infirm about the original search warrant that, in your view, if they had done that the next day, they could have validly searched the contents of that cell phone? Correct, Your Honor. Not only would they have done it, then that evidence would have been by the time that deadline to file motions was ordered by the court. It's almost impossible when the court orders a motions deadline and then the government, essentially a few days before trial, dumps a whole bunch of new evidence on someone and says, well, the motions deadline has passed. We're going to trial on this. It makes it difficult for defendants and defense attorneys to prepare for trial when the government delays that long when they simply could have done it. And I'll reserve my time. Thank you. You may. Thank you. Mr. Nelson. Thank you, Your Honors, and may it please the court. My name is Nathan Nelson. I represent the United States on appeal. I was also trial counsel below. This court should affirm the denial of the defendant's motion to suppress for essentially two independent reasons. One, because the district court was within its discretion in finding the motion was untimely. And two, because the district court correctly found that the seizure and then the later search of the phone were both reasonable. Starting with reason number one, the timeliness of the motion. Here, the district court did not abuse its discretion in finding the motion to be untimely. And there's sort of two components to this argument. One, it is waiver. District court found it untimely. The defendant didn't challenge that on appeal. It's not raised in this principle brief. It's not raised or addressed in this reply brief. Do you think it's, when the district court goes so quickly to a second reason and doesn't really say a lot about the timeliness issue, particularly as has been described, this case has been going on a long time. Evidence is sort of coming out at odd, unusual times. Do you think it's really safe for us to rely entirely on timeliness without more from the district court given this particular case? I do think the district court was clear that timeliness was one of its grounds for denying the motion. And so, yes, I do think the court can rely on timeliness in affirming the district court. However, obviously, I don't think the court needs to rely exclusively on timeliness. The issue of timeliness is both waived and that it wasn't addressed in the defendant's brief here on appeal. But the district court also got the timeliness issue correct. Here you had a phone that was seized in May of 2021. A superseding indictment was filed related to that search, essentially, in May of 2022. At that time, the state search warrant, the return for the state search warrant, and reports all documenting the seizure of this phone were disclosed to defense counsel. District court set a deadline, which under the rules of criminal procedure 12C1 it can do for motions to suppress. And the defendant did, in fact, file motions to suppress related to that search, but nothing related to the search of the phone. It wasn't until essentially five business days or five days before trial and 14 months after that deadline that this issue related to the phone was raised. Now, I hear counsel for defendant arguing, well, part of the reason for that was because he had certain technical difficulties accessing the phone's contents. But really, in the government's view, that shouldn't affect the timeliness question because the basis for the motion to suppress related to the length of the seizure of the phone. Counsel, let me ask you about that. Can an extended delay in performing a search be a basis for suppressing evidence? And if so, where does that point occur? Sure. So that's turning to the merits judge, and I do think yes. The government doesn't dispute that in some cases an extended delay in obtaining a search warrant can lead to motions to suppress. But here, what's helpful, I think, is to break this down. There's no dispute between the parties that the initial seizure of this phone was valid. It was done pursuant to a warrant, supported by probable cause, issued by a neutral and detached magistrate. So we have a valid initial seizure. There's also no dispute, I think, that the ultimate search of the phone was also reasonable for the same reason. Another separate valid search warrant issued by a magistrate, probable cause. The only claim is that the time between the valid seizure and the later valid search was so long that it rendered the continued seizure of that phone unreasonable. And the defendant really provides no authority for that proposition. This is a very personal item. The Supreme Court has sort of singled out cell phones as something that we all rely on and have very personal data on. Why doesn't that factor into the 22-month delay and holding on to something? You got the warrant. You could have done it, and you just didn't. Why isn't it at some point you got to say, you know, you kind of slept on your rights there? To Your Honor's point about the importance of cell phones to an individual, I do think it does factor in. Certainly, it can be a factor that should be weighed in some circumstances. But here, all the cases that the defendant cites, Mitchell out of the 11th, Burgard out of the 7th, Lace out of the 11th Circuit, all those deal with warrantless seizures, where the initial seizure is done without a warrant, either because of some exigency, because of consent, because of PC. Here, we're dealing with the initial seizure being a warranted seizure. And one of the things that comes with a warranted seizure, Your Honor, is there is a process, a procedure for asking for your property back. Under Rule 41G, there is a specific procedure that defendants can invoke if they would like to obtain property back that has been seized pursuant to a warrant. There's also a, for what it's worth, a related procedure, which I've cited in the brief under Minnesota state law, since this was a state search warrant. But either way, there's a specific legal process for obtaining the property back. So here, when you have that initial valid seizure, the defendant has not asked for the phone back in any way. And he's pending trial. The phone is obviously relevant because there's a trial pending and is likely to contain evidence for that trial. And he's, as Your Honor noted, he's also in custody, which I think diminishes that personal rights or interest in the phone. Really, there, all those factors together suggest that it's not unreasonable for the government to continue to hold a phone that it has validly seized pending an upcoming trial. So, so why get the second warrant? The second warrant was done in an abundance of caution. I mean, obviously... Well, you know how it kind of, kind of an interesting abundance of caution or oops, we better go make sure that this is, this is okay. And I think it does go to some of the things Your Honor has pointed out. There, the federal rules do have a process by which a phone can be seized and later examined. That the 14-day period under Rule 41 applies only to the seizure, execution of the warrant and seizure of the phone. A later review is permissible. I agree with, I think, I think Your Honor observed it, that there's not a lot of case law as to how much longer, how much one can wait while still relying on an initial warrant. So because that is unclear, the government's view, the safest course was to go to a judge and say, you know, look, we have this first warrant. We believe it's still valid. However, here's the PC for searching the contents of the phone. Obviously, phones are special in that the contents don't really go stale. I mean, it's a black box. The evidence really doesn't change, the digital evidence on a phone. So we get a warrant later. The PC is still sufficient to show a nexus with the phone and get that court permission to ensure that we are acting within the law in later searching the phone. So I think because this is a warranted initial search, a lot of these cases that talk about balancing the personal interest against the government's interest aren't really applicable here. I think the court can rely on the fact that this is a warranted search. He didn't ask for his phone back. He was pending trial and that should end the inquiry. However, if the court were to engage in this kind of balancing test that's discussed in some of these cases involving warrantless seizures, I think it still comes out as the district court found strongly in the government's favor. Yes, the defendant has an interest in his phone. No one disputes that. Phones are special. However, he was in custody. He couldn't have personal access to his phone in jail and he never asked for his phone back under the established procedure for doing so. What evidence actually came in from the phone? There's the screenshot, right? I believe it's two pieces of evidence. It's basically three transcript pages where this was discussed with the investigator. There were, I believe, I'm going to just estimate on number, there was about a dozen or so photographs of bags of about a pound of methamphetamine each taken on what appeared to be the rug of the house where the third search, the May 6th search took place. So there was about a dozen or so of those photos and then I believe there was a screenshot of driving directions from Minneapolis down to Arizona, which corroborated some of the cooperator testimony about trips to Arizona to pick up drugs and return them to Minnesota. So it was discussed in about three transcript pages, those pictures and that screenshot. And really, in the government's view, it was a small part of what was otherwise a very overwhelming case against the defendant. A case that involved two cooperators who essentially gave independently corroborating stories. You had three seizures of methamphetamine, large amounts of methamphetamine from places where the defendant was both present and lived. You had evidence from another cell phone seized in October of 2020 that had very detailed drug related text messages between the defendant and a supplier of methamphetamine based in Mexico. Also discussions about another trip to Arizona to pick up drugs. So in light of that overwhelming evidence, I think this was a very small part of it. Was there other evidence that came in that would have sort of duplicated the photos that were there? I see my time's up. May I respond to your honest question? Yes. There was cooperator testimony that methamphetamine from these Arizona trips had come back to this Elko house where these photos were taken. There were also, as I said, messages on another phone of, for example, large totes, plastic totes filled with cash, things of that nature. So there was other photographic evidence from a different phone of $600,000. And this photo came from his phone. That's correct. Thank you. We ask the court to affirm the judgment of the district court. Counsel, this is Judge Smith. Just before you begin following up that discussion, is there something that you could point to that if the cell phone evidence was excluded would indicate that the evidence adduced at trial would be insufficient to convict? Yes, Your Honor. Thank you. As I did not address that in my first statement. Yes. The main evidence that came off of that cell phone, as counsel stated, was a screenshot of a map from Minnesota to Arizona. Now, a lot of the evidence going towards that conspiracy was the two co-conspirators who both testified that Mr. Bigby made two trips down to essentially the to bring back north. Now, the entire time that Mr. Bigby was at that Elko residence, the third and final search, law enforcement was surveilling it. There was officer testimony at trial that they kept an eye on it. They watched it diligently day and night. They saw Mr. Bigby come and go. They saw other cars leave. They stopped cars leaving. They did not see any evidence of any methamphetamine whatsoever coming or going from that house being surveilled. The only evidence that Mr. Bigby had anything to do with methamphetamine that day was from this cell phone. That there are pictures taken off this cell phone of purported methamphetamine in that house and then a map showing a trip, basically a screenshot with a blue outline from Minneapolis down to Arizona. So that led credence to the co-conspirators testimony that Mr. Bigby took these trips down to the Mexican border to get that methamphetamine to bring back. Without that, it would have been two co-conspirators, both of whom were getting deals. One stated at trial that she understood in order for her to get the deal, Mr. Bigby needed to be found guilty of this crime. The other one was granted just immunity. No matter what, he wasn't going to be charged in this crime. Both of them admitted that they went down to Mexico, got drugs, came back. Both of them were caught with methamphetamine multiple times. In relation once with Mr. Bigby, but other times without. Mr. Dahlberg, a co-conspirator was found without Mr. Bigby. Thank you, your honors. Thank you.